UNITED STATES, Appellee

v

ALLEN C. ALOYIAN, Airman Third Class, U. S. Air Force, Appellant

16 USCMA 333, 36 CMR 489

334

335

No. 19,231

August 26, 1966

*Lieutenant Colonel Robert S. Amery* argued the cause for Appellant, Accused. With him on the brief was *Colonel Joseph Buchta.*

*Lieutenant Colonel David B. Stevens* argued the cause for Appellee, United States. With him on the brief was *Colonel Emanuel Lewis.*

QUINN, Chief Judge:

This is an appeal from a conviction for several offenses involving marihuana. The accused contends that a number of rulings and certain instructions by the law officer were prejudicial to him.

Before entering a plea of not guilty, the accused moved to make specifications 1 and 2 of the Charge "more definite and certain." Specification 1 alleged wrongful possession of marihuana, and specification 2 alleged wrongful use thereof. The offenses were allegedly committed at Suffolk County Air Force Base, New York, "at divers times during the period from . . . 1 March 1964," to December 2, and December 1, 1964, respectively.[1] Individual defense counsel contended the allegations were "too vague and indefinite," but he did not indicate he was in any way hindered thereby in preparation of the defense or that he was uninformed as to the particulars of the offenses. The law officer denied the motion. The accused challenges the correctness of the ruling.

The challenge blends two concepts. It is contended that each specification was duplicitous in that it embraced "numerous individual offenses." The argument is apparently inconsistent with the defense position at trial. Civilian defense counsel made many motions addressed to the specifications; none disputed the joinder of several acts into a single offense of a continuing nature. There was good reason for the omission. If convicted, the maximum confinement to which the accused was subject for specification 1, for example, was five years; but if each possession of marihuana during the period was made the basis of a separate specification, the confinement for each could be aggregated. The incidents disclosed in the accused's pretrial statement alone would have justified three charges authorizing confinement for fifteen years. The record before us compels the conclusion that, at trial, the accused had no objection to being charged with a single continuing offense, rather than with disparate crimes. In any event, in United States v Means, 12 USCMA 290, 30 CMR 290, we held it was proper to allege use of marihuana over a period of time as a single offense. The danger, if it exists, that the court members might not know they must agree on a finding as to each of several acts reflected in the evidence does not affect the sufficiency of the pleading. At best, it may justify a clarifying instruction at the appropriate place in the trial. This aspect of the accused's argument, therefore, has no merit.

Turning from duplicity to doubt, appellate defense counsel contend that the accused was confronted with a "veritable barrage of individual accusations," and particularization of the acts was essential. The *Means* case recognizes that a specification of the kind in issue may be insufficient to enable defense to prepare properly for trial. *Id.,* at page 292, footnote 1. For example, use of marihuana may constitute a violation of the Uniform Code of Military Justice whether committed on or off a military base. If the specification does not set out the place or places at which the several acts were allegedly performed, the accused may find it difficult to prepare his defense, especially if he intends to defend on the ground of alibi. No material omission is apparent in the specifications before us. Time and place were plainly set out. On its face, each specification was sufficiently definite and certain, as to all the essential facts of the offense charged, to withstand challenge on that ground. United States v Means, supra. Each was also sufficient to protect the accused against prosecution for any other act

---

[1] The specifications were later amended to change the beginning of the period of use and possession from March 1, to March 24. During the sentence proceedings, the law officer instructed the court-martial that, for sentence purposes, the two specifications were to be considered as one.

of the same nature during the same period. United States v Maynazarian, 12 USCMA 484, 31 CMR 70. The law officer was thus fully justified in denying the particular relief sought at trial.

Previous to this motion, defense counsel had moved to compel the Government to make available certain statements and reports by law enforcement agents. Defense counsel had a copy of the Article 32 investigation and copies of all statements made by the Government's prospective witnesses. Further, on the motion in issue, there was no indication by defense counsel that he required any more particulars of the charges to prepare the defense case or to avoid surprise. We conclude, therefore, the law officer did not err by not *sua sponte* treating the motion to make more definite and certain as including a contention that the defense required or desired more particulars. Cf. United States v Walker, 7 USCMA 669, 23 CMR 133.

Appellant's next assignment of error concerns the admission of evidence obtained in a search. The accused shared a room in the barracks with Airman Robert W. Campbell and Airman Kenneth E. Pryor. On December 2, 1964, the room was searched by agents of the Office of Special Investigations. A plastic bag containing a tobacco can was found in Campbell's locker. The contents of the tobacco can were analyzed and identified as marihuana by Philip V. Porto, Assistant Chief, Chemistry Section of the Alcohol and Tobacco Tax Division, United States Treasury Department's New York office. In addition, the contents of two small brown envelopes found in the pocket of Campbell's coat, which was in the locker, were identified as marihuana. At trial, the accused objected to the admission of these three items on the ground they were seized in an illegal search. The objection was overruled by the law officer.

Part of the defense argument is to the effect that the law officer prevented the accused from contesting the legality of the search on the ground he had "no standing" to assert an invasion of Campbell's constitutional privilege.

The record of trial, however, shows the law officer repeatedly indicated the accused had standing to challenge the legality of the search, but that "on the facts" presented to him "there was no question" of the legality of the search. Disregarding his plain language, and assuming the law officer really meant, as the defense contends, that the accused could not object because he had no standing to vindicate Campbell's constitutional privilege against search and seizure, his ruling was correct.

The accused's argument is predicated upon Jones v United States, 362 US 257, 4 L ed 2d 697, 80 S Ct 725 (1960). In that case, the defendant was charged in a two-count indictment with violations of United States Code provisions regulating traffic in narcotics. Before trial, he moved to suppress evidence obtained in the execution of a search warrant. The evidence consisted of narcotics found in a bird's nest in an awning outside a window of the apartment for which the search warrant had been issued. Just before the search, a Federal agent stationed outside the building had seen the defendant put his hand on the awning. At the time of the discovery of the narcotics, the defendant admitted to an agent that he lived in the apartment. On the motion to suppress, the Government disputed the accused's standing to complain about the legality of the search because he had alleged neither ownership of the narcotics nor an interest in the apartment greater than that of an " 'invitee or guest.' " The defendant testified that the apartment belonged to another person, who had given him a key to the premises and allowed him to use them " 'as a friend.' " The District judge denied the motion on the ground the accused lacked standing to object. *Id.*, at page 259.

Rule 41(e), Federal Rules of Criminal Procedure, provides in part that a "person aggrieved by an unlawful search and seizure" may move to suppress evidence so obtained. Interpreting the Rule, the Supreme Court of the United States held it expressed the long-settled doctrine that one person

cannot seek vindication of the constitutional rights of another. In the usual case, therefore, the moving party must allege he "was the victim of an invasion of privacy." The Court observed that a prosecution for violation of a narcotics provision presented "a special problem." The problem was that, reading Rule 41(e) narrowly, many Federal courts forced the defendant to choose between two harmful alternatives. He could either admit he owned or possessed the seized property or had a substantial possessory interest in the premises in which they were found, and thereby chance that the admission could be used against him at trial, or he could deny ownership or possession and surrender the right to attack the legality of the search and seizure. The Supreme Court analyzed the problem from two points of view. First, it observed that, since possession of narcotics provides an inference for the existence of an essential element of the offense, it was contradictory and inconsonant with "the administration of criminal justice" to admit the fruits of the search in evidence on the ground that petitioner *did not* have possession of the narcotics at that time. It concluded that the charge itself "revealed" the defendant as an "aggrieved person," and gave him standing to challenge the legality of the search. Secondly, the Court considered the nature of the defendant's connection with the premises searched and determined he had a sufficient interest in the apartment to constitute him a "person aggrieved" within the meaning of Rule 41(e). The Court rejected subtle distinctions of possession and control to hold that "anyone legitimately on premises where search occurs may challenge its legality . . . when its fruits are proposed to be used against him." The Court took care to ■■■■■■■ ■ point out, however, that this broad concept of standing did not extend to "those who, by virtue of their wrongful presence, cannot invoke the privacy of the prem-

ises searched." The record of trial demonstrates that the accused in this case was not "a person aggrieved" on either of the bases discussed in the *Jones* case. *Id.*, at pages 261, 263, 265, 267.

As to the nature of the accused's interest in Campbell's locker, there is a fundamental inconsistency in the accused's own argument. On the one hand, in his brief he concedes Campbell's locker was for "his exclusive use, and under his control"; on the other, there is an unarticulated assumption in the argument that accused's status as Campbell's roommate conferred upon him a legitimate right to use Campbell's locker for whatever purpose he desired.[2] The assumption is unjustified. The evidence demonstrates that a locker was assigned to each occupant for his personal and exclusive use. Without contradiction or objection by defense counsel, the law officer summarized the evidence as establishing a situation in which "two or three men live in one room," with each having his "own locker." It was not then, and it is not now, contended that the accused had permission to use Campbell's locker whenever he so desired. Campbell testified that none of the items taken from his locker were his. He did not know to whom the two packets found in his coat belonged, and he had never seen them before the search. The tobacco can in the plastic bag was "like" one that belonged to the accused. About two weeks before the search, the accused had asked him to put it in his locker. Although never asked whether it had been returned to the accused before the search, Campbell's testimony leaves no doubt that it was. It also leaves no doubt that as of December 2, the accused had neither express nor implied permission to store the can in his locker. The pertinent part of his cross-examination by defense counsel is, as follows:

"Q. Airman Campbell, you said

---

[2] The contention was explicitly made at trial. There, defense counsel insisted the accused had standing to object to the search of Campbell's locker because he was Campbell's roommate and was present in the room at the time of the search.

those brown bags, you never saw them before?

"A. No, sir.

"Q. You don't know what they are?

"A. No, sir.

"Q. You know nothing about those two brown manila envelopes, is that right?

"A. Yes, sir.

. . . . .

"Q. You don't know when a bag which looks like that one was placed in your locker, do you, how it got into your locker?

"A. No, sir.

"Q. You don't know how it got into your locker?

"A. No, sir.

. . . . .

"Q. Now, when did you put a bag which looked like that bag into your locker, with Airman Aloyian's consent?

"A. A few times I put it in there. The exact date, I couldn't say, but a few times it was in my locker.

"Q. It was in your locker a few times?

"A. Yes, sir.

"Q. Now, anybody could go into your locker, isn't that right? Did you leave your locker open?

"A. Some times it was open. Yes, sir.

"Q. Do you have an extra key for this locker?

"A. Yes, sir.

"Q. Where did you keep that key?

"A. I had it in the room. It was laying out.

"Q. Laying out where anyone could see it?

"A. It was in one of the drawers, sir, to the desk."

From the record, it is apparent that as far as Campbell was concerned, on December 2, he was the only person who could legitimately go into, or use, his own locker. However, it is suggested that Campbell's locker was a mere auxiliary to the room; and since the accused was a legitimate occupant of the room, his standing with respect thereto gave him standing to use Campbell's locker. In United States v Breen, 15 USCMA 658, 36 CMR 156, this Court concluded that a locker assigned to a service person was more comparable to an ordinary closet than to a storage structure of the kind contemplated by the Uniform Code of Military Justice as a building protected against unlawful entry. The comparison is of no help to the accused. First, the decision in the case did not confer upon either a stranger or the occupant of a room authority to use a locker assigned to another. Secondly, if Campbell's locker was merely an incidental part of the barracks room, then the squadron commander's authorization to search the room, which the record shows was issued upon probable cause, was sufficient to make the search lawful. Unlike the defendant in the *Jones* case, who was furnished a key to the apartment by the owner and was expressly allowed to use the premises, the accused had no permission from Campbell to use his locker. If the accused used Campbell's locker, his use was unauthorized. Cf. United States v Garlich, 15 USCMA 362, 35 CMR 334. As a result, assuming the search of Campbell's locker was unauthorized, the accused could not, as the *Jones* opinion noted, "invoke the privacy of the premises searched," because he was not a "person aggrieved."

*Jones'* condemnation of the procedural requirement of a preliminary admission of a possessory interest has also no application to this case. The law officer did not require the accused, as the trial court did in *Jones,* to admit possession of the marihuana packages as a precondition to objecting to the search in which they were seized. Consequently, the accused was not forced to choose, as *Jones* was, between the *Scylla* of confession to possession of the marihuana and the *Charybdis* of relinquishing his right, if any, to object to the legality of the search. As we read the Supreme Court's discussion of the "special problem" of the effect of possession in a narcotics case, it does not eliminate from consideration the question of whether the defendant "was the victim of an invasion of privacy."

Extracted, some of the language of the Court's opinion tends to the accused's conclusion that in a prosecution for wrongful possession of a narcotic, the defendant can challenge the legality of the search without inquiry of any kind as to his connection with the searched premises. Thus, Justice Frankfurter observed that since "possession both convicts and confers standing, [it] eliminates any necessity for a preliminary showing of an interest in the premises searched or the property seized, which ordinarily is required when standing is challenged." This broad generalization of the effect of possession was not, in our opinion, postulated by Justice Frankfurter as an absolute and independent basis of standing to object. There is a substantial difference between a search of the person and a search of premises. As to articles seized from the person, there is, as Justice Frankfurter noted, a manifest contradiction between requiring the defendant to first assert some interest in them before he can challenge the means by which they were taken from him and using the evidence of his physical custody as a basis for conviction. In such a situation, the defendant is "in a very real sense . . . revealed" as the victim of the search. The same direct relationship between the fact and the consequence of physical custody is not present when the search is not of the person but of premises to which the accused is a stranger. For example, if the defendant, without the knowledge or consent of the owner and occupant of a building, had entered the basement thereof and concealed a packet of narcotics, we would not suppose that the accused could successfully contend that the packet was seized in an illegal search, if it had been seized by a police officer who entered the basement to take custody of the packet because he had witnessed the accused's actions and suspected his purpose. Justice Frankfurter specifically rejected standing to object in such a situation. He said: "This [the right to object to an unlawful search of premises] would of course not avail those who, by virtue of their wrongful presence, cannot invoke the privacy of the premises

searched." Jones v United States, supra, 362 US 263, 264, 267.

Precisely the situation excluded by Justice Frankfurter from the ambit of the *Jones* opinion is present in this case. We pointed out earlier that the evidence excludes the possibility that the accused had any legitimate interest in Campbell's locker to entitle him to protect it against unlawful invasion. We conclude, therefore, that merely because the accused was charged with use and possession of marihuana he had no standing, under the circumstances of this case, to object to the search of Campbell's locker. However, even if we read the *Jones* opinion too narrowly on the point of standing to object, and assume the law officer erroneously denied the accused standing, there is still sufficient evidence in the record to enable us to determine whether the search was legal or not. See *Jones*, supra, at page 267. United States v Broy, 14 USCMA 419, 422, 34 CMR 199.

About November 20, 1964, Chief Master Sergeant Robert T. Hitchman, an air policeman, advised Major James O. Eggleston, the accused's squadron commander, that he had been informed by Airman William A. Tomasulo that the accused had smoked marihuana cigarettes. On November 24, Sergeant Hitchman advised the Major that Tomasulo had made a purchase of material from the accused which, on analysis by the Director of the Suffolk County Police laboratory, was determined to be marihuana. Thereafter, the Major participated in arrangements for Tomasulo to make a second purchase from the accused. These arrangements were effectuated on December 2, Tomasulo made contact with the accused and reached an agreement with him to purchase a packet of marihuana for $5.00. The accused told Tomasulo he would deliver the packet to him at his barracks in about ten minutes. The accused did not show up, instead Campbell came. He gave Tomasulo a packet and took $5.00 from him. After this transaction, Campbell returned to his room. Shortly thereafter, Major Eggleston, agents of the Office of Special Investigations, and

**341**

other law enforcement officials, entered the room. Agent Lawrence M. Bilodeau read Article 31, Code, supra, 10 USC § 831, to the accused, Campbell, and Airman Pryor, their roommate. He explained "to them" that "they didn't have to make any statement," but if "they did" it could be used "against them." He informed them they were suspected of using and possessing marihuana, and asked them if they understood their rights; "[t]hey all said 'yes'." Thereupon, Agent Bilodeau examined the accused's locker, but found nothing incriminating. He then searched Campbell's locker, and discovered the packages in issue.

As noted, the search took place in Major Eggleston's presence. Since he had participated in the ■■■■■■■ ■ arrangements for the second purchase by Tomasulo, it is at least reasonably inferable that he was informed of its accomplishment, and, therefore, knew that Campbell was also involved. Consequently, it beggars common sense to say he did not approve the inclusion of Campbell within the scope of the search. In the military, the authorization for a search can be oral as well as written. In United States v Hartsook, 15 USCMA 291, 35 CMR 263, we pointed out that presence at a search by an officer empowered to authorize it is evidence of his approval of it. In *Hartsook*, the evidence tended to indicate the search was merely exploratory. The evidence is to the contrary in this case. Before the second purchase of marihuana by Tomasulo, Major Eggleston had issued a written authorization for a search of the accused's room and effects. At least by fair implication, this authorization was limited to the contraband and the fruits of its sale. Agent Bilodeau's immediate announcement, in the Major's presence, of the suspected offenses implied the same limitation. It convincingly appears, therefore, that the search was properly circumscribed. The Major's presence insured close supervision of the agent's conduct. Consequently, he, not the Office of Special Investigations agents or other enforcement officials, controlled the propriety and the limits of the search. We con-

clude, therefore, that the search of Campbell's locker was legal, and the seizure of the packages was proper.

Our decision as to the lawfulness of the search and seizure is not fully determinative of the admis-■■■■■■■ ■ sibility of the packages of marihuana. Still unresolved is a question of relevancy. From what we have said as to the absence of a legitimate connection between the accused and Campbell's locker, it is apparent that the mere discovery of marihuana in the locker does not implicate the accused. Neither the accused's status as a roommate nor his presence in the room justifies an inference to that effect. United States v Mims, 8 USCMA 316, 24 CMR 126; cf. United States v Gainey, 380 US 63, 13 L ed 2d 658, 85 S Ct 754 (1965). In the *Mims* case, we held that proof of possession of narcotic implements by one occupant of a hospital ward did not "raise any kind of an inference that a third party occupant of . . . [the] ward was probably making use of the equipment." Accordingly, we held that the possession by another occupant was insufficient independent evidence to corroborate accused's confession that he used narcotics. *Id.*, at page 318.

"Evidence is not relevant," the Manual tells us, when it is "too remote or far-fetched to have any probative value" to establish the fact sought to be proved. Manual for Courts-Martial, United States, 1951, paragraph 137; see also United States v Boyd, 7 USCMA 380, 384, 22 CMR 170. Had there been no evidence in the case connecting the accused with the packets found in Campbell's locker, there would have been a serious question of the relevancy of their contents. However, before testimony of the contents was admitted in evidence, Campbell testified that the tobacco can taken from his locker was "like" one which belonged to the accused. He further testified that a key to the locker was kept in a desk drawer in the room to which the accused had ready access. This testimony tends to support an inference that the accused had placed the container in Campbell's locker. The in-

ference might perhaps not extend to the envelopes of marihuana found in Campbell's coat pocket, since Campbell denied any knowledge of them; and it might impermissibly be pyramiding inferences to conclude the accused placed them there from the inference that he placed the tobacco can in the locker. McNeely v United States, 353 F2d 913 (CA8th Cir) (1965). Still, assuming the state of the evidence did not justify admission in evidence of testimony of the contents of these envelopes at the point of the trial at which it was presented, the accused was not prejudiced. The relevancy of this testimony was manifest when the accused's pretrial statement was received. In his statement, the accused admitted "the stuff" found in Campbell's locker was his, and he had put it there while Campbell "was making a delivery to Tomasulo." Also, even if we assume, as is suggested by the accused's argument, that "the stuff" meant only the marihuana in the tobacco can, the admission of the envelopes was not prejudicial. In addition to the evidence of the marihuana in the tobacco can, there was other substantial evidence of use and possession of the material by the accused. As a result, the evidence that the envelopes found in Campbell's coat pocket contained marihuana was wholly cumulative, and could not have had any significant influence upon the court members in their deliberations on the accused's guilt or innocence. United States v Wimberley, 16 USCMA 3, 8, 12, 36 CMR 159.

Two separate attacks are leveled against the validity of the findings of guilty of specification 1. Since the law officer instructed the court-martial that, for the purpose of sentence, the "transactions" reflected in specification 1 were not separate from those in specification 2, it may be doubted that the accused suffered any prejudice from the alleged errors. United States v Drexler, 9 USCMA 405, 26 CMR 185. In any event, we discern no basis for reversal of the findings of guilty of specification 1 in these assignments of error.

Appellate defense counsel contend the law officer erred by expressing an opinion as to the sufficiency of the evidence to show possession by the accused. In part, the law officer instructed the court as follows:

". . . The facts in this case, in my opinion, are sufficient to show possession, if you so determine in your deliberations. I am presenting that to you as a fact which you must find. You don't have to find it, but there is sufficient evidence in the record to find it, if you so find."

In the Federal courts the trial judge has discretion to comment on the evidence. This Court has held that the law officer may give his opinion as to the evidence "when it will clarify the issues, assist the court in eliminating immaterial matters, or focus its attention upon the crucial points of the case," provided he makes clear to the court members that his opinion is not binding upon them. United States v Andis, 2 USCMA 364, 367, 8 CMR 164. We have also observed that the right to comment critically on the evidence must be exercised with great care so as not to deprive the accused of his right to have the court members make the factual determination as to his guilt. *Id.*, at page 367; see also United States v Berry, 6 USCMA 638, 20 CMR 354, concurring opinion, Chief Judge Quinn. Each case must be tested by its own facts to determine whether the law officer's remarks exceeded acceptable limits. It is contended that, in the circumstances of this case, the law officer's opinion "may well have tipped the scales in favor of the prosecution," notwithstanding he instructed the court members they "must disregard" his opinion and were themselves required to find the fact of possession. The record of trial does not support the contention.

A number of witnesses, including Campbell, testified that on many occasions during the period of the alleged possession, the accused gave them marihuana cigarettes. In his pretrial statement, the accused admitted that the "stuff" found in Campbell's locker was his and he had *placed* it in the locker while Campbell was out of the room.

Testimony by an eminently qualified expert established that the "stuff" was marihuana. Also, the material transferred by the accused to Tomasulo on November 24, 1964, was proven to be marihuana. All the evidence was undisputed. It can safely be concluded, therefore, that the law officer's opinion added nothing to the weight of the evidence against the accused to influence the court members' deliberations. See Hardy v United States, 335 F2d 288 (CA DC Cir) (1964). The conclusion is all the more justified in view of the law officer's final instruction that the court members should not consider his opinions because they "alone have the independent responsibility" to determine the accused's guilt or innocence. See United States v Kravitz, 281 F2d 581 (CA3d Cir) (1960).

The findings of guilty of specification 1 are also said to be invalid because the law officer erroneously defined the meaning of the term "possession." Set out below are the material parts of the instructions on the subject:

"LO: . . . The court is advised that the possession by the accused must be knowing, conscious, and exclusive. Such possession of marihuana may be found to be wrongful unless the contrary appears.

"Further, the definition of possession does not mean that he has to physically have it in his hand. If he knows where it is, has a certain amount of control over it, in my opinion that is sufficient possession. The facts in this case, in my opinion, are sufficient to show possession, if you so determine in your deliberations. I am presenting that to you as a fact which you must find. You don't have to find it, but there is sufficient evidence in the record to find it, if you so find.

"IDC: Sir, we would note our objection. This is in contradiction to what you just said as exclusive possession, that it must be knowing, it must be conscious, and exclusive.

"LO: All right, I'll give you such —In my opinion this means that he doesn't physically have to have it in his hand. If he knows where it is,

and it is his, it doesn't physically have to be right in his own hand. It could be anywhere that he places it. And, in my opinion, that is what possession means. Is the court all clear on that? Any questions on that?

"(There was no response on the part of the court members)."

At the outset, it is apparent the law officer's supplementary definition was intended to apply only to the tobacco can and envelopes of marihuana found in Campbell's locker. In their brief, appellate defense counsel concede that this part of the instructions only "had reference to the marihuana found in Campbell's locker." From that standpoint, the accused may have no real complaint even if the definition is wrong. If it applies only to the one instance of possession represented by the marihuana in Campbell's locker, it is, at least, arguable that the original definition, which is asserted by the accused to be correct, was utilized by the court members to evaluate all the other instances of absolute possession attributed to the accused. As a result, the findings of guilty of specification 1 could be sustained as to all but the last part of the period of possession, that is, the last day of the period can be changed to November 24, the day the accused turned over a packet of marihuana to Tomasulo, in lieu of December 2, the date of the search of Campbell's locker. See Rodella v United States, 286 F2d 306 (CA9th Cir) (1960), certiorari denied, 365 US 889, 6 L ed 2d 199, 81 S Ct 1042 (1961); United States v Dunn, 9 USCMA 388, 26 CMR 168. However, we need not decide the issue on the basis of the limitation of the scope of the challenged definition. All instructions on the same subject should be read together to determine whether they provide correct legal standards for the court-martial. United States v Burse, 16 USCMA 62, 65, 36 CMR 218.

Possession embodies the idea of physical control or dominion over property. It is not synonymous with ownership or legal title, which can, but does not necessarily, include pos-

344

session. Consequently, it is error to instruct that a finding of guilty of wrongful possession of a contraband substance can be predicated upon evidence of ownership. As the Court of Appeals said in United States v Landry, 257 F2d 425, 431 (CA7th Cir) (1958): "Ownership is not proof of possession any more than possession is proof of ownership." Appellate defense counsel contend that the instructions allowed the court members to return a finding of guilty of specification 1 upon evidence that the marihuana found in Campbell's locker belonged to the accused. The contention disregards the context of the law officer's reference to ownership. He did not say, as appellate defense counsel argue, that a finding that the accused owned the marihuana would alone justify conviction. Ownership was specifically joined with the concept of physical control. Thus, the court members were advised that possession did not mean the marihuana had to be "physically" in the accused's "own hand"; it was enough if it was where "he places it." Possession is not limited to "manual touch or per- ██ sonal custody." Rodella v United States, supra, page 312. It can be constructive as well as actual. One may have dominion and control over property though it is not on his person or in his immediate presence. For example, a person physically at his office is still in possession, i.e., capable of exercising domonion and control, over the articles in his own apartment. "It is," said the Court of Appeals for the Ninth Circuit, "not necessary that possession be immediate." Brown v United States, 222 F2d 293, 297 (1955).

When, as here, the contraband was elsewhere than on the accused's person, it may be necessary to ex- ██ plain to the court members ██ that possession includes the right to exercise physical control over the article wherever it was found. Sometimes that idea may be sufficiently conveyed by an instruction to the effect that possession "must be knowing, conscious, and exclusive," See United States v Lamp-

kins, 4 USCMA 31, 15 CMR 31. Such an instruction is recommended in Air Force Manual 110-5B, April 27, 1960, Court-Martial Instructions Guide, page 79. Yet, even this instruction may be misleading if others besides the accused have ready access to the place in which the contraband is found. "Exclusive" does not mean that no one but the accused can have physical control over the property. It means only that a person charged with possession has the capability of controlling the property and keeping others from "meddling with it." 72 CJS, Possession, page 233. The Court of Appeals for the Eighth Circuit expressed the difference as follows:

"The exclusive possession discussed in the authorities as a necessity to the presumption of guilt is not necessarily the possession of a single defendant. Two or more may have the exclusive possession of stolen property. One defendant in the crime may hold the actual possession of stolen property for himself and other defendants." [Weisman v United States, 1 F2d 696, 698–699 (1924).]

One can exercise dominion and control over property even if he has no legal right to the premises in which he hides it. Thus, in the Rodella case, the Court of Appeals observed that it could "see no reason why an object cached by a person . . . in a certain spot on deserted land, not owned by him, . . . could not be deemed in law within that person's possession." Id., at page 312. In substance, this was the situation pre- ██ sented by the evidence. Campbell testified that, without his knowledge or consent, someone had cached the marihuana in his locker. In his pretrial statement, the accused admitted he was the owner of the "stuff" and had placed it in the locker. The law officer correctly concluded that the standard form of instruction needed clarification to emphasize that possession could be found to be in the accused, notwithstanding the marihuana was in Campbell's locker, if the accused had placed it in the locker, and still retained control

over it. The legal doctrine is unimpeachable.

Appellate defense counsel contend that the degree of control required by the instructions was too vague and uncertain to provide a meaningful guideline. Actually, the law officer could have instructed that the accused could be convicted of possession of the marihuana in Campbell's locker if the court members found that the accused had *placed* it there. The accused's physical control over the marihuana did not have to extend to the moment of its discovery. Rodella v United States, supra. By requiring the court members to find that the accused retained a "certain amount of control" over the marihuana after he had placed it in Campbell's locker, the law officer imposed a greater burden of proof upon the Government than it was required to bear under the evidence. In any event, while the standard could have been more precise, it was not devoid of meaning. The amount of control was expressly referenced to the "facts in this case," some of which were specified in the instructions, while others were clearly implied. Thus, the law officer referred to evidence showing that the accused placed the marihuana in the locker. The reference necessarily required the court members to consider the accused's ability to gain access to Campbell's locker at his pleasure. Considering the instructions in their entirety, we are satisfied they did not mislead the court-martial to conclude that the accused's possession of the marihuana in Campbell's locker could be based on his ownership of it, rather than on the continuing control he exercised over it.

Lurking beneath the accused's challenge to the instructions is perhaps his real complaint, which is that the evidence of control is insufficient to support a finding that he possessed the marihuana while it was in Campbell's locker. See United States v Jones, 308 F2d 26 (CA2d Cir) (1962); Hernandez v United States, 300 F2d 114 (CA 9th Cir) (1962). The evidence, which includes the accused's admission of an ability to obtain ready entry into Campbell's locker, is, in our opinion, more than legally required to support the findings.

The decision of the board of review is affirmed.

KILDAY, Judge (concurring in the result):

I concur in the result reached by Chief Judge Quinn. As to that portion of his opinion dealing with Jones v United States, 362 US 257, 4 L ed 2d 697, 80 S Ct 725 (1960), I desire to express some additional views.

In my view, the portion of the opinion of the Supreme Court which is relevant here is the following:

". . . No just interest of the Government in the effective and rigorous enforcement of the criminal law will be hampered by recognizing that anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him. This would of course not avail those who, by virtue of their wrongful presence, cannot invoke the privacy of the premises searched." [Jones v United States, supra, at page 267.]

Not infrequently, we experience some difficulty in applying Supreme Court decisions rendered upon factual situations arising in the civilian community to factual situations peculiar to the military community. In the instant case, appellant's commanding officer and his military subordinates had the legal right to be within the room—a barracks of his own organization, assigned to appellant and his two roommates. However, under many decisions of this Court, the individual lockers within the room are protected from unreasonable search and seizure. United States v Dollison, 15 USCMA 595, 36 CMR 93; United States v Hartsook, 15 USCMA 291, 35 CMR 263; United States v Westmore, 14 USCMA 474, 34 CMR 254.

In United States v Breen, 15 USCMA 658, 36 CMR 156, a majority of this Court held that the offense of unlawful entry is not made out by an allegation

346

that the property entered was an individual's locker. In his dissenting opinion, the Chief Judge said:

"I know of no place in the military establishment that is more widely used by enlisted personnel for storage of their personal effects and service equipment than the locker assigned to them. It is, in a very real sense, part of the enlisted man's *home*. In United States v Adams, 5 USCMA 563, 570, 18 CMR 187, we said: 'Generally a military person's place of abode is the *place where he bunks and keeps his few private possessions*.' (Emphasis supplied.) I would, therefore, answer the certified question in the negative, and reverse the decision of the board of review." [United States v Breen, supra, at page 660.]

The locker of a member of the military service is unique to his status. It ranges from a storage place for his few personal effects to a "part of the enlisted man's home." It cannot be the subject of unlawful entry. United States v Breen, supra. Its physical dimensions and form are such that a person could not be within the same. It becomes difficult to understand how, when the search is of a locker, an individual could be "legitimately on premises where a search occurs," within the meaning of Jones v United States, supra. The barracks area is subject to be entered by the commanding officer at his pleasure. It therefore appears to me that Jones v United States, supra, does not apply to the facts of this case. It is not necessary for us to hold that *Jones* could never apply to the search of the locker of a member of the military service. I do believe, however, that under the facts of this case the doctrine announced in *Jones* does not apply and the appellant had no standing to complain of any unlawful search of Campbell's locker.

FERGUSON, Judge (dissenting):

I dissent.

With due respect to my brothers, I disagree with the denial of relief to the accused in this case. Unlike them, I would reverse for the failure of the law officer to grant the defense motion regarding the charges in question; his refusal to entertain objections addressed to the issue of search and seizure; and his unfair comments and instructions regarding the possession of marihuana. I have seldom seen a case which so clearly requires corrective action, for the reasons which I will hereinafter develop.

The accused was tried by general court-martial at Suffolk County Air Force Base, New York, upon charges of wrongful possession, use, and sale of marihuana, in violation of Uniform Code of Military Justice, Article 134, 10 USC § 934. He was convicted of three specifications and sentenced to confinement at hard labor for twelve months, forfeiture of $75.00 per month for twelve months, and reduction. The convening authority approved the sentence and the board of review affirmed. Thereafter, we granted accused's timely petition for review. The issues will be discussed *seriatim*.

I

Specifications 1 and 2 of the Charge alleged, respectively, wrongful possession and wrongful use of marihuana "at divers times during the period from on or about 1 March 1964 to on or about 2 December 1964."[1]

Immediately following arraignment, defense counsel moved to have these counts made more definite and certain, as "it is almost impossible to discover when he is being charged with this crime . . . as being too vague and indefinite." The motion was denied. Thereafter, the evidence indicated use and possession of marihuana on at least twelve different occasions between the dates specified.

The primary purpose of criminal pleading is to advise the accused of the offense with which he is charged and give him sufficient information to prepare his defense. United States v Sell, 3 USCMA 202, 11 CMR 202. The utmost precision is, of course, not re-

---

[1] The specifications were amended later in the trial to allege a period from March 24, 1964, to December 2, 1964.

quired, but the count must be such as "sufficiently apprises the defendant of what he must be prepared to meet." United States v Sell, supra, at page 206.

Thus, it is generally held, "in the absence of statute, that an indictment or information must state with particularity the time at which the offense alleged therein was committed." 27 Am Jur, Indictments and Informations, § 70. There must be set forth "reasonable particularity of time, place and circumstances." United States v Cruikshank, 92 US 542, 558, 23 L ed 588, 593 (1876). The particulars set forth must be such as to enable the accused to make his defense to the crime alleged. United States v Hess, 124 US 483, 31 L ed 516, 8 S Ct 571 (1888). See also Ball v United States, 140 US 118, 35 L ed 377, 11 S Ct 761 (1891). As was succinctly stated in Barnes v State, 42 Tex Crim 297, 59 SW 882 (1900), at page 882:

". . . It is necessary, in charging an offense, to set out some particular date when the offense was committed. Such is the unbroken line of authorities since the case of State v Eubanks, 41 Tex 291."

Reasonable particularity is clearly lacking here. The accused was faced with an allegation of misconduct on divers occasions over a period of ten months. Under such a pleading, the Government was allowed to show anything which might incriminate him in that period. Thus, it could—and did—range unchecked over a period of almost one year in producing evidence of accused's alleged misconduct. As Aloyian's counsel noted, defense against such a broadside attack is almost impossible. An alibi, attacks on credibility, and similar parries to the Government's case simply become impossible if it, by such averments as this, is enabled to make the accused meet and account for his conduct for almost an entire year. In short, he is entitled to reasonable notice as to the offenses on which he is arraigned, and this of necessity must include a reasonable limitation on the allegation of time. United States v Sell, United

States v Cruikshank, both supra. Such is not present here.

Moreover, by moving to make the specification more definite and certain, the accused was seeking particulars from the Government as to the nature of the charges against him. In United States v Williams, 12 USCMA 683, 31 CMR 269, we clearly pointed out that, while the modern tendency is to short forms of pleading which allege only legal conclusions,

". . . resort to such pleading is always subject to a motion for further particularization. Bartell v United States, 227 US 427, 57 L ed 583, 33 S Ct 383 (1913); Myles v United States, 170 F2d 443 (CA5th Cir) (1948); 27 Am Jur, Indictments and Informations, §§ 83, 112, 113; Annotation, 5 ALR2d 444, 462." [United States v Williams, supra, at page 685.]

See also United States v Paulk, 13 USCMA 456, 32 CMR 456, at page 458, wherein we referred to "the burden of the United States to particularize a general averment of criminal conduct, especially when the count in question is so phrased as to permit the prosecution to range widely through proof of different offenses in order to satisfy the fact finders of accused's guilt."

From the foregoing, it is clear to me that the specifications in question were improperly drawn and subject to further particularization. Therefore, I am of the view that the law officer erred prejudicially in denying accused's motion for appropriate relief.

In so concluding, I do not overlook my brothers' rationale, based as it is on the result reached in United States v Means, 12 USCMA 290, 30 CMR 290. There, the Chief Judge opined that allegations similar to those now before us were legally sufficient, although he expressly noted it was "open to an accused to demand further particulars if he believes that he has insufficient information about the details of the offense charged." *Means*, supra, at page 292, footnote 1. Judge Latimer, concurring, declared that a single use of marihuana might not constitute service-discrediting conduct and, there-

fore, it was open to the armed services to allege a course of behavior. I dissented on the basis that the count was vague, indefinite and duplicitous, conditions which I likewise find to exist here. I declared, at page 296:

"Military practice permits the allegation of only one offense within the terms of a single specification—just as in civilian practice an indictment is allowed normally to allege no more than one offense within the confines of a single count. United States v Parker, 3 USCMA 541, 13 CMR 97; Manual for Courts-Martial, United States, 1951, paragraph 28*b*; Rule 8(a), Federal Rules of Criminal Procedure. Transgression of this rule results in duplicitous charges and, upon the making of a proper objection, the accused is entitled to have the allegation against him reduced to a single offense in order that he may know upon which act the Government relies for conviction and prepare his defense accordingly. See, generally, Winthrop's Military Law and Precedents, 2d ed, 1920 Reprint, pages 139, 140, 143. Moreover, he is entitled to correction of the duplicity in order to avoid the contingency that some of the court members may base their vote of guilty upon one act of misconduct while others, unconvinced of that occurrence, predicate their vote upon the other, duplicitous act. Wiborg v United States, 163 US 632, 41 L ed 289, 16 S Ct 1127 (1896); Rolando v United States, 1 F2d 110 (CA8th Cir) (1924)."

I cannot accept *Means,* supra, as dispositive of this case. Not only did I there disagree with my brothers, but their separate opinions hardly make it of precedential value. Moreover, since the division occurred in that case, we have steadily moved away from its reasoning. Thus, in United States v Williams and United States v Paulk, both supra, we emphasized the right of the defendant on motion to receive further particularization of the charge. In *Paulk,* supra, and more recently in United States v Davis, 16 USCMA 207, 36 CMR 363, we reversed when the Government included within the bounds

of a single count more than one offense. In my opinion, these cases have severely impaired the divided holding in *Means,* supra, and rendered its holding practically nugatory. Hence, despite the similarity between its facts and those of the case now before us, I cannot accord it controlling weight here.

Finally, I would direct my brothers' attention to the consequences of upholding such specifications as this, which embody an unknown number of criminal acts. With the evidence in conflict, it is almost certain that the members of the court-martial are likely to reach agreement on the basis of widely differing acts within the count. Thus, it may well be that two-thirds of the court will not agree on the same acts and a proper verdict will not be reached. At least, there is a fair risk such may occur when we permit shotgun-type pleadings to be used indiscriminately. See my concurring and dissenting opinion in United States v Carter, 16 USCMA 277, 36 CMR 433. In sum, the purpose of criminal pleading is to narrow the issue presented to the jury and not to furnish it with a barrel of matters from which to pick and choose a basis for their findings.

I would set aside the findings of guilty of specifications 1 and 2 of the Charge on the basis of the law officer's denial of the defense motion to have them made more definite and certain.

II

The second issue deals with the search and seizure of marihuana from the locker of accused's accomplice, Airman Campbell, which allegedly belonged to the accused. A statement of the relevant circumstances is in order.

The accused roomed with Airman Pryor and Airman Campbell in Room 109, Barracks 313. Pryor testified accused, Campbell, and an Airman Moore smoked marihuana together on numerous occasions.

In November 1964, Airman Tomasulo informed Chief Master Sergeant Hitchman, Air Police Superintendent, that marihuana was being used in the squadron. The information was

**349**

passed to the squadron commander, Major Eggleston, and the Office of Special Investigations. On November 24, Tomasulo was given a five-dollar bill and told to make a purchase of marihuana. According to his testimony, he did so, on November 25, from the accused. The substance was turned over to Hitchman, analyzed, and found to be marihuana. This information was also passed to Major Eggleston. On December 2, Tomasulo was instructed to make another purchase, with marked money. He approached the accused, who ultimately declared he would send it over. About fifteen minutes later, Airman Campbell delivered a packet to Tomasulo, received payment for it, and left.

Based on the foregoing information, as well as police reports from accused's home area, a search authorization was procured from Major Eggleston in writing. This "warrant" permitted the search of the "person, dwelling room, footlocker, Room 109, Barracks 313, located at Suffolk County AFB, N. Y. of Allen C. Aloyian, A3C" and the agents "to seize any property pertinent to this investigation."

Thereafter, the agents, accompanied by Major Eggleston, proceeded to accused's room and stated they wished to search for marihuana. An examination of accused's locker being unproductive, a search was made of Campbell's locker. Two packets of marihuana were discovered in his clothing. A plastic bag of the drug was discovered sitting in the locker. As to this bag, Campbell testified:

"Q. Had Airman Aloyian ever discussed this bag with you, with reference to placing it in your locker?

. . . . .

"A. Approximately two weeks or so before the 2nd of December, Airman Aloyian asked me to put it in his, put it in my locker.

. . . . .

". . . The circumstances I don't remember just at this time. I don't remember exactly what he said. He asked me to put it in his locker, and, or, to put it in my locker. The rea-

son, something at, something at home."

While Campbell was testifying, the defense sought an out-of-court hearing and objected to the receipt of this evidence on the basis of unlawful search and seizure. Trial counsel argued that, as the items came from Campbell's locker, none of Aloyian's rights were violated. The law officer ruled, "If they were not taken from the accused's possession, I see no problem." Upon the defense contending accused was Campbell's roommate, was present during the search, and was accused by the Government of the marihuana's possession, the law officer declared, "If these items were in Campbell's locker, and he is not objecting to the search made of his locker, I don't see where the accused can object to it." After further presentation of authorities, the following colloquy occurred:

"LO: I am overruling you, on the basis that it is not an illegal search and seizure.

"IDC: So, it is your ruling that we have no standing to raise the issue?

"LO: You have standing to raise the issue, and I am ruling against you.

"IDC: Sir, if you say we have standing, that means the government must show probable cause.

"LO: I don't know what you mean by standing.

"IDC: We have a right to object.

"LO: You have a right to object and I have a right to make a ruling. I am overruling your objection. Now, let's go on with the case. I understand the implications of what I have done.

"IDC: We take exception to the Law Officer's ruling.

"LO: You don't have to. You have got your objection on the record. Let's call the court in and go ahead, unless there is something else you want to produce. I denied it on the basis that when three men are in one room and each have their own locker, if it is not the accused's

locker, as far as I am concerned it is not an illegal search and seizure."

When the objection was later renewed, the following exchange occurred:

"IDC: Sir, we would object on the grounds we have been denied the right to raise issues of illegal search and seizure.

"LO: Nobody has denied you the right to do that. Who denied it to you?

"IDC: You did, sir.

"LO: I did? I did not.

"IDC: You said we had no standing.

"LO: All I did was pass on the facts as presented to me. I haven't told you that you can't bring up any question you want at any time. The facts I heard, there was no question of search and seizure, but you can raise it at any time you want."

Major Eggleston was not called as a witness, nor, indeed, in light of the law officer's ruling, were the facts and circumstances surrounding the issuance of the warrant or the conduct of the search developed to any great extent. Thus, whether Major Eggleston authorized the search on the basis of probable cause and whether the "warrant's" permission to seize any property pertinent to the investigation was ever, as required, narrowed to particularly sought matters remains unexplored, especially as regards any basis for searching Campbell's locker. See, *e.g.*, United States v Barkouskas, 38 F2d 837 (MD Pa) (1930); United States v Hartsook, 15 USCMA 291, 35 CMR 263.

There can be no doubt from the foregoing that the law officer, though stating his willingness to hear any objection, ruled against accused on the sole basis that, as to him, there was no illegal search, for he had no right to complain of an examination of Campbell's locker. Thus, while he expressed a commendable willingness to listen to the objection, he declared he saw no grounds on which accused could complain of a search of Campbell's locker; he gave no recognition to accused's "standing" to object to that search; and finally concluded "there was no question of search and seizure." Yet, Campbell testified the marihuana was accused's property; he had given the accused permission to keep it in his locker; he had smoked marihuana with the accused on numerous occasions; and on December 2, had actually delivered the packet of the drug to Tomasulo and received payment therefor. Indeed, the law officer ruled he was an accomplice of the accused on that date and, accordingly, instructed the court-martial as to the weight which it might accord his testimony.

This denial by the law officer of accused's right to complain of the search of Campbell's locker and the seizure therefrom of the critical evidence is the crux of the problem before us. In my opinion, it was clearly erroneous and, in light of the fact that such established accused's possession of the drug, prejudicially so.

In Jones v United States, 362 US 257, 4 L ed 2d 697, 80 S Ct 725 (1960), a very similar situation was presented. There, officers executing a search warrant arrested the accused in a friend's apartment. Narcotics and narcotics paraphernalia were found in an awning. An officer had seen the accused place his hand in the awning. Accused used the apartment with the tenant's permission, had a key, and kept clothing there. He paid nothing for the privilege. He was charged with possession of the narcotics. His motion to suppress the evidence was denied on the basis he had no standing to complain of the search of the apartment. In reversing, the Supreme Court, through Mr. Justice Frankfurter, declared, at page 263:

"... Two separate lines of thought effectively sustain defendant's standing in this case. (1) The same element in this prosecution which has caused a dilemma, i.e., that possession both convicts and confers standing, eliminates any necessity for a preliminary showing of an interest in the premises searched or the property seized, which ordinarily is required when

**351**

standing is challenged. (2) Even were this not a prosecution turning on illicit possession, the legally requisite interest in the premises was here satisfied, for it need not be as extensive a property interest as was required by the courts below.

"As to the first ground, we are persuaded by this consideration: to hold to the contrary, that is, to hold that petitioner's failure to acknowledge interest in the narcotics or the premises prevented his attack upon the search, would be to permit the Government to have the advantage of contradictory positions as a basis for conviction. Petitioner's conviction flows from his possession of the narcotics at the time of the search. Yet the fruits of that search, upon which the conviction depends, were admitted into evidence on the ground that petitioner did not have possession of the narcotics at that time. The prosecution here thus subjected the defendant to the penalties meted out to one in lawless possession while refusing him the remedies designed for one in that situation. It is not consonant with the amenities, to put it mildly, of the administration of criminal justice to sanction such squarely contradictory assertions of power by the Government. The possession on the basis of which petitioner is to be and was convicted suffices to give him standing under any fair and rational conception of the requirements of Rule 41(e)."

In answer to the Government's argument that accused was only a trespasser or invitee, and taking up the second ground set forth in its opinion, the Court rejected any idea that gossamer distinctions of property law were to play any part in search and seizure cases. It stated, at page 267:

". . . No just interest of the Government in the effective and rigorous enforcement of the criminal law will be hampered by recognizing that anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him.

This would of course not avail those who, by virtue of their wrongful presence, cannot invoke the privacy of the premises searched. As petitioner's testimony established Evans' consent to his presence in the apartment, he was entitled to have the merits of his motion to suppress adjudicated."

See also United States v Jeffers, 342 US 48, 96 L ed 59, 72 S Ct 93 (1951).

Under the facts presented here, accused makes out even a stronger case than did the defendant in *Jones*, supra. First, he is charged with the possession which, as Mr. Justice Frankfurter noted, "both convicts and confers standing, [and] eliminates any necessity for a preliminary showing of an interest in the premises searched or the property seized." Jones v United States, supra, at page 263. Secondly, as Campbell himself directly testified, accused had permission to place the seized goods in his locker; he was accused's accomplice on the date in question and, contrary to the principal opinion, there was here no question of unlawfully secreting the goods in the locker. Hence, following the dictate of the Supreme Court and not enmeshing the accused within the fine web of property law distinctions, there is here "made out a sufficient interest in the premises [the locker] to establish him as a 'person aggrieved' by their search." *Jones*, supra, at page 265.

Other, later judicial interpretations of the *Jones* holding likewise support this interpretation: Burge v United States, 333 F2d 210 (CA9th Cir) (1964); Henzel v United States, 296 F2d 650 (CA5th Cir) (1961); Contreras v United States, 291 F2d 63 (CA9th Cir) (1961); Hair v United States, 289 F2d 894 (CA DC Cir) (1961).

Thus, in *Henzel*, supra, Chief Judge Tuttle declared, at page 651:

"In Jones, the Supreme Court held that a person accused of possessing narcotics in violation of the Federal Narcotics Laws could attack the Government's allegedly unlawful seizure of the narcotics even though (a) his

presence in the apartment where the narcotics were seized was merely that of a 'guest' or 'invitee,' and (b) he did not admit to 'ownership' of the narcotics. In so holding, the Court repudiated the rule which had been adopted by many Courts of Appeals that, in order to qualify as 'a person aggrieved by an unlawful search and seizure,' the accused must show ownership or possession of the seized property or a substantial possessory interest in the invaded premises."

And, in Contreras v United States, supra, Judge Barnes succinctly stated, at page 65:

". . . Where a criminal charge against a defendant is based upon possession, the Jones case establishes that the defendant, is, by that very fact, a 'person aggrieved by an unlawful search and seizure,' (Fed. R. Crim. P. 41(e), 18 U.S.C.A.) and may, therefore, raise the constitutional question."

See also McDonald v United States, 335 US 451, 93 L ed 153, 69 S Ct 191 (1948), at page 456; Note, 62 Harvard Law Review 1229.

Unlike my brothers, therefore, I would find the law officer erred prejudicially in denying the accused's standing to contest the search of Campbell's locker. In so concluding, I have not overlooked their rationale. I believe it errs fundamentally as to both the facts and the law. First, I cannot read this record as indicating the law officer gave any significance to the search objection other than ruling that the matter was solely governed by the fact the contraband was found in Campbell's locker. Secondly, unlike them, I believe Mr. Justice Frankfurter, speaking for a unanimous Court, meant precisely what he said and left little room for interpretation.

Turning to my brother Kilday's concurring in the result opinion, I must confess my inability to reason, as he does, that *Jones,* supra, does not apply to the situation here presented when the search involves another's locker—obviously incapable of entry by the accused. True, it is not "premises" upon which the accused can physically be, but, as in any other storage area, it is a place in which his property can be left. And, of course, he may do so legitimately, if he has the actual owner's permission. That is, as I have outlined, precisely what occurred here, for Campbell testified he placed the marihuana in his locker at Aloyian's request. Thus, Aloyian, in every possible sense, was "legitimately on premises where a search occurs." Jones v United States, supra, at page 267. Moreover, I reiterate, the whole basis of the charge against Aloyian is that he *possessed* the marihuana in Campbell's locker. This alone confers standing upon him to object. Jones v United States, supra; Henzel v United States, supra; Contreras v United States, supra. And, in distinguishing the situation presented here, I find my brothers make no mention of this independent basis for accused's standing to object.

Finally, to thrust these matters aside and, in essence, to find the search in any event legal is no more than the idlest speculation in light of the undeveloped record. Cf. Henzel v United States, supra, and Contreras v United States, supra. As defendant was not allowed to enter into any real contest on the question, we cannot superimpose our own views on the incomplete evidence here presented. Thus, the case demands reversal and return for a rehearing at which the matter can be fully and properly explored. Jones v United States, supra; United States v Davenport, 14 USCMA 152, 33 CMR 364. I would so order.

III

The third issue inquires into the propriety of the law officer's instructions regarding possession of marihuana. The deficiencies which I discern are twofold in nature. Again, the facts must be set forth to place the question in proper perspective.

As will be recalled, the bulk of the evidence regarding possession of marihuana, as attributed to the accused, rested upon that which was discovered in Campbell's locker. At the conclusion of the case, the law officer very prop-

erly instructed the court of the need to find beyond a reasonable doubt the accused wrongfully had marihuana in his possession. The president then interjected a question:

"PRES: Did he have it in his possession then?"

The law officer replied that he would give an instruction on the matter later. He advised the court that "the possession by the accused must be knowing, conscious, and exclusive." He then added:

"Further, the definition of possession does not mean that he has to physically have it in his hand. If he knows where it is, has a certain amount of control over it, in my opinion that is sufficient possession. The facts in this case, in my opinion, are sufficient to show possession, if you so determine in your deliberations. I am presenting that to you as a fact which you must find. You don't have to find it, but there is sufficient evidence in the record to find it, if you so find."

On objection by the defense, who pointed to the need for conscious, knowing, and exclusive possession, the law officer replied:

"LO: All right, I'll give you such —In my opinion this means that he doesn't physically have to have it in his hand. If he knows where it is, *and it is his,* it doesn't physically have to be right in his own hand. It could be anywhere that he places it. And, in my opinion, that is what possession means. Is the court all clear on that? Any questions on that?" [Emphasis supplied.]

In my opinion, the charge is clearly erroneous in purporting to set forth a correct statement of the law of possession and, in addition, amounts to an unfair comment in the evidence.

First, in United States v Lampkins, 4 USCMA 31, 15 CMR 31, we pointed out that accused's possession of marihuana must be knowing. In so doing, we adopted the rationale of California precedents and the definition of such possession as "an 'immediate and exclusive possession and one under the

dominion and control of defendant.'" People v Gory, 28 Cal 2d 450, 170 P2d 433 (1946), at page 436. See also People v Herbert, 59 Cal App 158, 210 Pac 276 (1922), and People v Sinclair, 129 Cal App 320, 19 P2d 23 (1933). Indeed, in United States v Blair, 10 USCMA 161, 27 CMR 235, we pointed out, at page 163:

". . . Possession, of course, is not synonymous with title or ownership. Possession may be changed and at the same time title may be retained."

Compare United States v Maginley, 13 USCMA 445, 32 CMR 445, and Albrecht v United States, 273 US 1, 71 L ed 505, 47 S Ct 250 (1927).

The law officer, however, confused the concepts of possession and ownership and left the jury to infer the former from the latter. Of course, he was correct in stating that possession did not depend upon the accused physically having it in his hand, but he positively declared it did exist if he had "a certain amount of control over it" and later qualified that remark by making possession the equivalent of knowledge of its whereabouts *plus title.* Thus he opined to the court that it existed, "If he knows where it is, *and it is his.*" (Emphasis supplied.) Applied to the evidence that Aloyian's accomplice had the drug in his locker but alleged ownership in Aloyian, the failure to delineate a proper definition of possession led directly to accused's conviction.

In United States v Landry, 257 F2d 425 (CA7th Cir) (1958), narcotics were seized from the person of defendant's companion and from her bedroom. Accused was charged with their possession on the basis of an admission of ownership. In reversing, the Court of Appeals declared, at page 431:

"There can be no doubt that actual possession was in Dolores, not Landry. The government appears to so recognize because it states in its brief that a finding of possession in Landry could not be sustained absent his admission of ownership. The government informs us that no case has been found in which the precise

question has been decided. We suspect the reason for this is that this is the first time the government has advanced the novel idea that ownership of narcotics is proof of their possession. Ownership and possession of a thing, of course, may merge in the same person but, on the other hand, ownership may be in one person and possession in another. Assuming, as we think proper, that Congress employed the word 'possession' in its ordinary and usual connotation, it certainly means something different from 'ownership.' Ownership is not proof of possession any more than possession is proof of ownership. If Congress had intended that a presumption arise against the owner as well as the possessor of a narcotic, it would have so declared. The same can be said of constructive possession or the unexercised right of possession.

. . . . . .

"It would not be helpful to quote the numerous definitions of the words 'possess' and 'possession' which have been called to our attention. As good a definition as we have seen is that of this Court in a criminal case, United States v Wainer, 7 Cir, 170 F2d 603, 606. The Court stated:

'To "possess" means to have actual control, care and management of, and not a passing control, fleeting and shadowy in its nature.'

As already noted, the undisputed evidence shows that Dolores, not Landry, had actual control, care and management of the narcotic at the time it was found. The suggestion that he might previously have had possession of it barely approaches the dignity of a guess."

And, in Hernandez v United States, 300 F2d 114 (CA9th Cir) (1962), the court noted the need, in drug cases, to inform the jury with care of the concepts involved in this area. Thus, it stated, at page 119:

". . . The term [possession] must be defined with precision and restraint for in effect we are defining the basis upon which punishment will be imposed. It is well to be re-

minded, too, that 'the term 'possession' is a highly ambiguous one in the law, and hence 'so fraught with danger that the courts must scrutinize its use with all diligence * * * .' "

See also Brothers v United States, 328 F2d 151 (CA9th Cir) (1964).

The true test of possession under the charge here involved is either conscious, physical custody of the drug or, if custody be in another or elsewhere, dominion and control over it, either directly or through the agent who holds it. Brothers v United States, supra; United States v Rosario, 327 F2d 561 (CA2d Cir) (1964); Mack v United States, 326 F2d 481 (CA8th Cir) (1964). The authorities quoted and cited, supra, establish the error of testing it by ownership or by leaving the issue wide open to the jury through using such terms as exercising "a certain amount of control." In short, what the law officer did was to allow the jury to convict on the basis of custody in Campbell and ownership in Aloyian. Yet, as we have seen, supra, the law requires more if the custody be elsewhere. In light of the evidence and the court's specific interest in the state of the proof, I believe the instruction was prejudicially erroneous.

Finally, I point out that the advice is likewise prejudicial as a most unfair comment on the evidence. In effect, when questioned by the president, the law officer informed the court that the proof was such that a verdict of guilty, if reached by them on the possession counts, would be sustained. True, he noted their duty to find the facts, but he informed them that they were sufficient in law, if so found. In my opinion, this was a clear invitation to convict.

We have pointed out the authority of a military judge, like his Federal civilian counterpart, to comment on the evidence. United States v Andis, 2 USCMA 364, 8 CMR 164. But we also declared, in the same opinion, that comments must be fairly made:

". . . To protect the accused in criminal trials, it is provided that

**355**

the judge in his comments must not distort or add to the evidence; that he must not draw unwarranted inferences and must not emphasize, in summing up the evidence, portions in favor of one party and minimize those in favor of the other. He can make no appeal to the passions and prejudices of the jury, nor be argumentative in favor of or against one of the parties. He is permitted to express an opinion even on the guilt of the defendant, so long as he advises the jury clearly and unequivocally that his opinion is not binding. For cases embodying these limitations, see United States v Murdock, 290 US 389, 78 L ed 381, 54 S Ct 223; Hickory v United States, supra; Quercia v United States, supra; Hicks v United States, 150 US 442, 37 L ed 1137, 14 S Ct 144; Allison v United States, 160 US 203, 40 L ed 395, 16 S Ct 252; Horning v District of Columbia, supra; Herron v Southern P. Co. 283 US 91, 75 L ed 857, 51 S Ct 383; Robinson v United States, 290 Fed 755 (CA2d Cir) (1923), cert den, 263 US 700, 68 L ed 513, 44 S Ct 6; Boyett v United States, 48 F2d 482 (CA5th Cir) (1931); United States v Notto, 61 F2d 781 (CA2d Cir) (1932)."

I can think of no unfairer nor more unjust advice than to tell the fact finders, in effect, the case will be upheld, if they desire to convict, particularly in a case like this where, due to the generality of the pleadings, the prosecution has been permitted to range widely over time and space and demonstrate so many instances of alleged misconduct. Compare Hardy v United States, 335 F2d 288 (CA DC Cir) (1964), and United States v Woods, 252 F2d 334 (CA2d Cir) (1958). To introduce such a notion is to tell the jury the prosecution's case is strong enough and to "be argumentative in favor of or against the parties." *Andis,* supra, at page 367. Thus, the defense contentions regarding Campbell's lack of credibility and that of the other witnesses were set at naught and the court's verdict effectually pointed out for it in advance. For this reason, too, I would set aside the findings of guilty.

IV

In sum, then, I would reverse here on the basis of the failure to make the pleadings more definite and certain; the refusal to entertain the accused's objection to the search and seizure; and the instructions of the law officer. Added together, these clearly denied Aloyian a fair hearing. At the outset, he was met with a veritable cannonade of charges, stretching over a period of months in time. When the prosecution relied principally on evidence of possession of marihuana by Campbell to convict him, he was told he could not complain. And when even the court was puzzled at convicting him on proof that Campbell was violating the law, they were quite erroneously informed that ownership equated possession and that, in any event, the facts to support guilt were there. Stripped of all verbiage, that is the situation presented. I believe it demands another trial.

I would reverse the board of review and order a rehearing.