UNITED STATES, Appellee

v

LONNIE M. GAMBOA, Private, U. S. Army, Appellant

No. 27,257

May 24, 1974

*Captain Allan K. DuBois* argued the cause for Appellant, Accused. With him on the brief were *Colonel Arnold I. Melnick, Major H. M. Hougen, Captain Howard M. Schmeltzer,* and *Captain John Howard Shows.*

*Captain R. Craig Lawrence* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Ronald M. Holdaway, Lieutenant Colonel Donald W. Hansen, Captain M. Douglas Deitchler,* and *Captain Lawrence D. Martin.*

## OPINION OF THE COURT

DUNCAN, Chief Judge:

Private Lonnie M. Gamboa was convicted of the wrongful possession of 2400 grams of marihuana, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934, despite his efforts to suppress the evidence before trial and his remonstrations of its introduction into evidence at trial.

On the morning of August 5, 1972, Lieutenant Colonel Roger James Browne was informed by Criminal Investigation Division Agent Neil Douglas Smith that the latter had received a tip by telephone from a confidential informant.[1] The informant told Agent Smith that on the previous night he had observed amphetamines on the top shelf of appellant's wall locker and marihuana elsewhere in the locker. The informant also identified the appellant by name, mentioned where he lived, stated his battery building number, and floor. Smith also informed Browne that the informant gave a description of the arrangement of furniture in appellant's room. Smith stated that "[t]he informant described the room as being a two man room with the two beds as you walk into the room,

---

[1] The caller was incorrectly referred to as a confidential informant; however, the informant was anonymous.

he didn't give directions, but as you walk into the room, he said the two beds were on the left and two wall lockers to the right and a locker and a bed near the window belonged to Private Gamboa." Colonel Browne's account of the information from the informant, as relayed to him by Agent Smith, included the fact that there were "some paintings on his [Gamboa's] locker." However, Smith testified that he neither spoke of paintings to Browne nor did the informant mention paintings to him (Smith).

Having made spot checks of the rooms in the building every 10 days or so, Browne was familiar with the layout of appellant's room. His knowledge of the room arrangement matched that given by the informant. He was aware that a shakedown inspection of Gamboa's room 2 weeks prior to the search in question had disclosed marihuana. However, Gamboa's roommate, Specialist Palkow, claimed ownership of the marihuana. Gamboa's battery commander informed Browne that Gamboa had been hospitalized for a drug overdose 4 months prior to the August 5th search. Browne believed that Gamboa was associated with drug users. He stated that "in my mind" Gamboa was associated with alleged and known drug users, specifically his roommate, Palkow, and Private Doak, who

then was awaiting action for an administrative discharge based on his refusal to participate in the drug rehabilitation program. Browne also believed that there had been a CID investigation of appellant regarding drug involvement.[2]

## I

First, we conclude that the unidentified informant's revelations to Smith, standing alone, were insufficient to establish probable cause. The officer who authorized the search was told that the items searched for were personally observed in Gamboa's locker. Personal observation is certainly an efficient means of satisfaction of the requirement of Aguilar v Texas, 378 US 108 (1964), that an affidavit must contain some of the underlying circumstances from which the informant concludes that the contraband is where he claims it is. On the other hand, although the officer who authorized the search was told that informant's information was the product of his personal observation, that disclosure by itself fails to satisfy the other Aguilar requirement that the informant must be shown to be credible or his information reliable. United States v Harris, 403 US 573 (1971); Spinelli v United States, 393 US 410 (1969). See also United States v Vasquez, 22 USCMA 492, 47 CMR 793 (1973); United States v Penman, 16 USCMA 67, 36 CMR 223 (1966).

## II

The first arm of Aguilar may be satisfied where there is sufficiently detailed information provided by the informant which is independently verified prior to the search. Draper v United States, 358 US 307 (1959). In the case before us, our problematic concern is the second arm of Aguilar. In a proper fact setting, an unidentified informant may be deemed credible by a showing of corroborative circumstances, much the same as the lack of sufficiency of a recitation of underlying circumstances can be bolstered by other evidence. Conceivably there may be circumstances where information gained from an unidentified informant coupled with certain detailed information may be adequate to satisfy either or both of the Aguilar requirements. Corroborating detail facts in support of the unidentified informant's reliability must be at least as trustworthy as a statement of knowledge about the informant which would satisfy Aguilar without such corroborative facts.

Joining the informant's detail of Gamboa's room with the prior knowledge of Browne that Gamboa's room was arranged in a fashion that was somewhat unusual, although not remarkably so,[3] is some evidence worthy of consideration as corroborative. Because of the incongruity of the Government information concerning Browne's claimed receipt of the informant's description of paintings on Gamboa's locker, which Smith denied having communicated to Browne, this matter is not properly to be considered as a part of the informant's detail of the room. Cf. United States v Sam, 22 USCMA 124, 46 CMR 124 (1973). In sum, we believe that the detail information from the informant joined with Colonel Browne's knowledge which dovetailed with that information is insufficient to make the anonymous informant credible.

## III

Colonel Browne stated that he had knowledge of the appellant's reputation and of certain of his associates. The Supreme Court has decided cases where the question of a suspect's reputation and its relation to probable cause is discussed. In Spinelli v United States, supra, Mr. Justice Harlan states:

> Finally, the allegation that Spinelli was "known" to the affiant and to other federal and local law enforcement officers as a gambler and an associate of gamblers is but a bald and unilluminating assertion of suspicion that is entitled to no weight in appraising the magistrate's decision. Nathanson v United States, 290 US 41, 46, 53 S Ct 11, 12, 78 L Ed 159 (1933).

---

[2] Agent Smith maintains that he mentioned CID involvement to Colonel Browne, but could not recall having said CID investigation.

[3] In the building 30 percent of the rooms were not arranged in the usual arrangement.

393 US at 414. In United States v Harris, supra, Chief Justice Burger wrote:

In Spinelli, however, the Court rejected as entitled to no weight the "bald and unilluminating" assertion that the suspect was known to the affiant as a gambler. 393 US, at 414, 89 S Ct, at 588. For this proposition the Court relied on Nathanson v United States, 290 US 41, 54 S Ct 11, 78 L Ed 159 (1933). But a careful examination of Nathanson shows that the Spinelli opinion did not fully reflect the critical points of what Nathanson held since it was limited to holding that reputation, *standing alone,* was insufficient; it surely did not hold it irrelevant when supported by other information. This reading of Nathanson is confirmed by Brinegar v United States, 338 US 160, 69 S Ct 1302, 93 L Ed 1879 (1949), in which the Court, in sustaining a finding of probable cause for a warrantless arrest, held proper the assertion of the searching officer that he had previously arrested the defendant for a similar offense and that the defendant had a reputation for hauling liquor. Such evidence would rarely be admissible at trial, but the Court took pains to emphasize the very different functions of criminal trials and preliminary determinations of probable cause. Trials are necessarily surrounded with evidentiary rules "developed to safeguard men from dubious and unjust convictions." Id., at 174, 69 S Ct, at 1310. But before the trial we deal only with probabilities that "are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar, *supra,* at 175, 69 S Ct, at 1310.

We cannot conclude that a policeman's knowledge of a suspect's reputation—something that policemen frequently know and a factor that impressed such a "legal technician" as Mr. Justice Frankfurter—is not a "practical consideration of everyday life" upon which an officer (or a magistrate) may properly rely in assessing the reliability of an informant's tip. To the extent that Spinelli prohibits the use of such probative information, it has no support in our prior cases, logic, or experience and we decline to apply it to preclude a magistrate from relying on a law enforcement officer's knowledge of a suspect's reputation.

403 US at 582–3. This statement is from part II of the *Harris* opinion in which the Chief Justice was joined by Justices Black and Blackman.[4] We also believe that information regarding an officer's properly founded belief of a suspect's reputation for illegal activity may be considered and weighed.

■ Lieutenant Colonel Browne's testimony reveals that in determining probable cause he considered Gamboa's alleged association with known drug users. The roommate, Palkow, admitted that drugs found in the room were his. There can be no logical inference from that episode that Gamboa was also involved with the contraband or was a drug holder or user. More weighty would seem to be Palkow's declaration against his penal interest. Moreover, Chief Judge Quinn stated in United States v Aloyian, 16 USCMA 333, 342, 36 CMR 489, 498 (1966), that "[n]either the accused's status as a roommate nor his presence in the room justifies an inference" which would implicate a soldier when marihuana was discovered in his roommate's locker. See also United States v Surenian, 41 CMR 963 (AFCMR 1970).

■ The record does not present any circumstances furnishing a basis for Browne's knowledge of Gamboa's alleged

[4] In United States v McNally, 473 F 2d 934, 938–9 (3d Cir 1973) (footnotes omitted), the opinion reads:

The opinion of Chief Justice Burger, holding that the second branch of the *Aguilar* test was met, clearly indicates a diminution of the requirement *Spinelli* imposed on that branch of the

test. Moreover, in its language and tenor, the *Harris* opinion indicates a loosening of the rigid strictures of *Spinelli*. Nonetheless, *Harris* did not overrule Spinelli, and in testing the sufficiency of the affidavit in the present appeal, the general pattern described in *Spinelli* must therefore be followed.

association with Doak or any association, outside of sharing a room, with Palkow. If the inference is available, that Browne, as a commanding officer, knows the social associations of those of his command, then the facts of those associations may be weighed in probable cause determination. Indulgence in such an inference however contributes little aid to the query in the absence of any information that the association was for activity in the drug scene. Likewise, weighing Browne's knowledge that Gamboa was hospitalized 4 months prior to the time the search was authorized is proper, but the remoteness of any such prior drug use· dilutes the impact of consideration that it once had.

We find that the information furnished by the anonymous informant and the other knowledge Browne had of Gamboa which we may properly consider, combined, does not provide an ample basis for us to conclude that the second prong of *Aguilar's* trustworthiness requirement has been met. Lieutenant Colonel Browne's suspicion was justified, but our search for probable cause has produced nothing more than that.

Unlike Draper v United States, supra, where a known reliable informant gave very detailed information which was checked out by officers and found to be accurate, in the case at bar the informant was anonymous and there was no police investigation before the search which served to corroborate the specific detail of the occurrences the Draper informant predicted would occur.

United States v Harris, supra, is also distinguishable from the case at bar. There a confidential informant made a sworn statement and, although he remained unidentified to the magistrate, he made an admission against his penal interest.

Our review of the tip, the tip's detail, and Browne's knowledge all reviewed in totality leads us to find that the military judge erred to the prejudice of the appellant by overruling the motion to suppress the contraband found in the search of appellant's locker.

Accordingly, the findings of guilty and sentence are set aside. The decision of the U. S. Army Court of Military Review is reversed and the record of trial is returned to the Judge Advocate General of the Army. The charge and its specification are ordered dismissed.

Judge QUINN concurs.

Senior Judge FERGUSON did not participate in this case.