UNITED STATES, Appellee,

v

WILLIAM DAVID MATHIS, III, Airman Third Class,
U. S. Air Force, Appellant

16 USCMA 522, 37 CMR 142

No. 19,754

February 17, 1967

*Lieutenant Colonel Milton E. Kosa* argued the cause for Appellant, Accused. With him on the brief was *Colonel Joseph Buchta.*

*Lieutenant Colonel David B. Stevens* argued the cause for Appellee, United States. With him on the brief were *Colonel Emanuel Lewis* and *Captain John W. Adler.*

QUINN, Chief Judge:

The accused was convicted of stealing a radio and a television set from the alert room of a unit of the Western Air Rescue Center, George Air Force Base, California, in violation of Article 121 of the Uniform Code of Military Justice, 10 USC § 921. He contends his conviction is supported, in substantial part, by evidence obtained as the result of an illegal search and seizure.

At trial, the law officer held an out-of-court hearing to determine the legality of the search. Agent Herbert L. Chamberlaine, Office of Special Investigations, testified that, several days after discovery of the theft, he received information indicating the stolen property was in the home of Mrs. Katherene Swaffar, in Adelanto, a community about five miles from the base. At his request, Sergeant Jay D. Hughes, of the San Bernardino County Sheriff's Office, and Agent Patrick A. R. Gandall, Office of Special Investigations, proceeded to the premises to check the report. Neither had a search warrant. At the time, Chamberlaine apparently also knew the accused had informally "moved in" with Mrs. Swaffar during the previous month.[1]

Hughes and Gandall arrived at Mrs. Swaffar's house at about 7:00 p.m. When Mrs. Swaffar opened the door in response to their knock, Hughes identified himself and Gandall. He informed Mrs. Swaffar they had come "to look for stolen Government property"; and he asked whether they could " 'check . . . [her] home.' "

Invited inside, they entered the living room. Hughes then advised Mrs. Swaffar that "she did not have to submit to" a search; but if she did, anything found, and anything she said, could be used against her. Hughes also advised her she could consult a lawyer "before she took any action." Mrs. Swaffar indicated she "understood"; she said she had "nothing to hide," and the officers were "free" to search. Hughes inquired whether any airman had brought property into the house. Mrs. Swaffar told him the accused had, and that some of the things were in the bedroom. Asked by Hughes whether they could "check it," she escorted them to the room. There, Hughes noticed a radio on a night table. On the "backplate" of the radio he saw "numbers and letters" identifying it as belonging to the Rescue Center unit. Gandall picked up the radio, and the group returned to the living room. Hughes then noticed a television set. At the rear of the set was a "military slip," bearing a serial number which matched that of the stolen set. Specifically advising her she was not required to do so, Gandall asked Mrs. Swaffar to sign a prepared certificate certifying she had consented to the search. Mrs. Swaffar signed the certificate.

The law officer ruled that Mrs. Swaffar had consented to the search.[2] Accordingly, he admitted into evidence the radio and television set and a confession, which the accused made when confronted with the recovered articles. Appellate defense counsel contend the ruling was erroneous be-

---

[1] The accused testified in the out-of-court hearing that from the time he moved in he had contributed about twenty dollars per pay period for "necessities."

[2] There is some language in a discussion that followed the ruling which indicated that the law officer believed the accused had no "proprietary interest" in Mrs. Swaffar's house. The accused interprets these remarks as a holding by the law officer that he lacked standing to challenge the legal-

ity of the search. The remarks, however, can be construed as pertaining only to Mrs. Swaffar's authority to consent to the search, but assuming they constitute a ruling as to the accused's lack of standing, the circumstances of the search were fully developed at trial. We are, therefore, in a position to decide the issue. See United States v Aloyian, 16 USCMA 333, 341, 36 CMR 489; United States v Martinez, 16 USCMA 40, 36 CMR 196.

cause Mrs. Swaffar's consent to the search was not a waiver of the accused's constitutional right to be secure in his own effects. They maintain that the fact she shared possession of the premises with him, did not make her his agent for the purpose of waiving his constitutional rights. From that premise, they argue her consent did not authorize a search of the premises.

The Fourth Amendment does not prohibit the search of a private dwelling. It proscribes "unreasonable searches and seizures." A search is reasonable and, therefore, not within the constitutional prohibition if made pursuant to a warrant issued upon probable cause by competent authority. See United States v Penman, 16 USCMA 67, 36 CMR 223. A warrant, however, is not the only legal basis for a reasonable search. Consent by a person authorized to give consent is also a valid basis for a lawful search. United States v Wilcher, 4 USCMA 215, 15 CMR 215.

When one person has the right to exclusive present occupancy, others cannot consent to a search of the premises, although they may possess residual rights of ownership. United States v Garlich, 15 USCMA 362, 35 CMR 334. However, a different situation obtains when several persons share the right of immediate possession, and each has an equal right to authorize others to enter the premises.

The Fourth Amendment does not forbid police officers to enter a house into which they have been invited by a person who lives therein. As the Court of Appeals for the Eighth Circuit observed, such an invitation does not involve waiver of the constitutional rights of one occupant by another. Rather, it presents a question only of the latter's "own rights to authorize entry into premises where she lives and of which she had control." Roberts v United States, 332 F 2d 892, 897 (1964), certiorari denied, 380 US 980, 14 L ed 2d 274, 85 S Ct 1344

(1965). See also Nelson v People of State of California, 346 F2d 73, 77 (CA9th Cir) (1965), certiorari denied, 382 US 964, 15 L ed 2d 367, 86 S Ct 452 (1965). Here, Mrs. Swaffar's right of occupancy was actually paramount to the accused's. As between the two she, not he, had the primary right to admit anyone into the house or to forbid entrance. However, assuming their authority was equal, on her own initiative she could allow anyone to enter the house.

Appellate defense counsel characterize Mrs. Swaffar's permission to enter as mere submission or acquiescence to the officer's color of authority. The evidence, however, compels the conclusion that she consented to their entry. She was fully informed of their purpose, and fully advised as to her right to keep them out. It is, therefore, manifest that Hughes and Gandall were not trespassers, either as to Mrs. Swaffar or the accused, when they entered the house. Inside, Mrs. Swaffar could not allow them access to any place personal to the accused, such as a closet or chest for his clothing and effects. Cf. United States v Aloyian, 16 USCMA 333, 36 CMR 489. She could, however, invite them to any room over which she exercised dominion and control in her own right. United States v Decker, 16 USCMA 397, 37 CMR 17. The record demonstrates she had control over, and the right of access to, both rooms into which she escorted Hughes and Gandall. Since they were rightfully in those rooms, the officers were free to observe everything open to view. Without infringing upon a constitutional right of the accused, they could look at the exterior of the television set in the living room and at the exterior of the radio in the bedroom. United States v Burnside, 15 USCMA 326, 35 CMR 298. That is all they did. Their visual inspection of these articles established beyond all doubt that they were stolen Government property. At that moment, therefore, they had a right to seize the articles. As we noted in the *Burnside* case, at page 333, "police officers properly on private premises do not violate the

Fourth Amendment, if, without a warrant, they seize contraband, or the fruits of a crime which are in plain view." It follows, therefore, that the law officer correctly overruled the defense objection to the search.

The decision of the board of review is affirmed.

Judges FERGUSON and KILDAY concur.