# UNITED STATES
### v.
Staff Sergeant Charles S. BOYCE, FR 137–38–9131, 10th Organizational Maintenance Squadron, Twenty-First Air Force (MAC).

ACM 22168.

U. S. Air Force Court of Military Review.

31 May 1977.

Appellate Counsel for the Accused: Colonel Robert W. Norris and Captain David A. Bateman.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., and Captain Gilbert J. Regan.

Before LeTARTE, EARLY and FORAY, Appellate Military Judges.

## DECISION

EARLY, Senior Judge:

Tried by general court-martial, the accused was convicted, despite his pleas, of stealing various items of property of another airman of a value of about $1420.00, in violation of Article 121, Uniform Code of Military Justice. The approved sentence extends to a bad conduct discharge, confinement at hard labor for six months, forfeiture of $200.00 per month for six months and reduction to airman.

Appellate defense counsel assign two errors. The second we consider to be without merit and warranting no further discussion. In the first error, appellate defense counsel assert:

> PROSECUTION EXHIBITS 1–14 WERE INADMISSIBLE AS THE PRODUCTS OF AN ILLEGAL SEARCH AND SEIZURE.

The facts adduced at trial show that on 31 May 1976, the victim, upon returning to his barracks room after an absence of some six hours, discovered various items of personal property missing. Because of several factors making him a suspect, the accused was questioned but he denied involvement in the theft. Subsequently the agent investigating the case contacted a Staff Sergeant Corpening with whom the accused and his family were then residing. Sergeant Corpening related that the accused and his family had moved into his house located off-base in Alconbury Village, England, during April, 1976. Because the house was already furnished, Sergeant Corpening told the accused to store his household effects in a garage nearby. The accused was to pay Sergeant Corpening what he could afford, and, in fact, did pay 35 pounds at the end of April and May.

Since the accused was to be reassigned soon, Sergeant Corpening moved his own property in the garage to the right side and told the accused to place his goods generally on the left side. However, there were some items belonging to Corpening and to another party stored on the left side. Sergeant Corpening testified that he felt he could move the accused's furnishings around if he wished, and, if he felt it necessary, to have the accused move his furnishings out of the garage. As he testified, "It's my garage."

After being questioned, Sergeant Corpening signed a consent to search the garage. Pursuant thereto two Office of Special Investigation agents, two security policemen and two British policemen searched the garage. This missing property (Prosecution Exhibits 1–14) was found intermingled with the accused's household goods.[1]

Appellate defense contend that the accused had an expectation of privacy as to his stored belongings and that Sergeant Corpening could not give permission to the agents to search the accused's property in the garage. We disagree.

■ Whatever may have been the exact nature of the agreement between Sergeant Corpening and the accused, it is clear that the garage was used for their mutual benefit and that Sergeant Corpening retained the ultimate control over the garage and the positioning and disposition of the property stored therein. See *United States v. Yarbrough*, 48 C.M.R. 449 (N.C.M.R.1974). Under this factual situation the decision in *United States v. Matlock*, 415 U.S. 164, 94

S.Ct. 988, 39 L.Ed.2d 242 (1974) is dispositive. Therein it was held:

[W]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected.

.        .        .        .        .

The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, . . . but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

415 U.S. at 171, 94 S.Ct. at 993.[2]

■ Clearly, then, where two or more persons have equal rights to the use or occupancy of premises, either may give consent to a search, and both take the risk that the other will permit third parties to inspect the premises. *United States v. Sferas*, 210 F.2d 69 (7th Cir. 1954), cert. denied sub nom., *Skally v. United States*, 347 U.S. 935, 74 S.Ct. 630, 98 L.Ed. 1086 (1954); *Frazier v. Cupp*, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969).[3]

---

1. One item was found behind some of Corpening's property against the back wall. The rest were found in and among the accused's property so situated that the "plain view doctrine" would not be applicable. Cf. *United States v. Mathis*, 16 U.S.C.M.A. 522, 37 C.M.R. 142 (1967).

2. In departing from traditional property concepts which governed third-party consent cases, see Annot., 31 A.L.R.2d 1078 (1953), *Matlock* adopts, at least by implication, the doctrine of reasonable expectation of privacy. Thus, in the instant case, the fact that Sergeant Corpening had ready access to the accused's belongings and could move them around as

necessary belies any *reasonable* expectation of privacy by the accused.

3. In *Frazier v. Cupp*, supra, a duffel bag used by appellant and his cousin, Rawls, was left in Rawls' home. The police upon arresting Rawls asked him if they could have his clothing. They were directed to the duffel bag, and Rawls and his mother consented to the search. Therein the police found appellant's clothing and seized it. The Court held:

Petitioner argues that Rawls only had actual permission to use one compartment of the bag and that he had no authority to consent to a search of the other compartments. We will not, however, engage in such metaphysi-

The findings of guilty and the sentence are

AFFIRMED.

LeTARTE, Chief Judge, and FORAY, Judge, concur.

cal subtleties in judging the efficacy of Rawls' consent. Petitioner, in allowing Rawls to use the bag and in leaving it in his house, must be taken to have assumed the risk that Rawls would allow someone else to look inside.

394 U.S. at 740, 89 S.Ct. at 1425.