UNITED STATES

v.

**Anthony P. GORSCHE, 386 74 7248, Private (E–1), U. S. Marine Corps.**

**NCM 78 0918.**

U. S. Navy Court of Military Review.

Sentence adjudged 28 Feb. 1978.

Decided 15 Nov. 1978.

LT David S. Durbin, JAGC, USNR, Appellate Defense Counsel.

CAPT John P. Hertel, USMC, Appellate Government Counsel.

Before BAUM, FERRELL and GRANGER, JJ.

FERRELL, Judge:

Appellant, contrary to his plea, was convicted of possessing 850 grams of marijuana, in violation of U. S. Navy Regulations and Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892. The sentence awarded by the military judge and approved by the convening authority provided for a bad-conduct discharge, confinement at hard labor for 4 months, and forfeiture of $175.00 per month for 4 months. The supervisory authority suspended the bad-conduct discharge for the period of confinement and 6 months thereafter, but otherwise approved the sentence.

Appellant has assigned the following error:

THE MILITARY JUDGE ERRED IN ADMITTING PROSECUTION EXHIBIT 4 AS IT WAS ILLEGALLY SEIZED FROM APPELLANT'S LOCKER.

We find merit in the assigned error.

Several Marines attached to Truck Company, Headquarters and Service Battalion, 1st Division Support Group, 1st Marine Division (Rein), Fleet Marine Force, Camp Pendleton, California, on 17 November 1977, were discovered smoking marijuana. The suspected users were detained in a room and interviewed by Major Smith, the Company Commander. They told Major Smith they had been smoking marijuana and identified as their source another member of the company named "Pina." Major Smith then told Warrant Officer Phipps ". . . to go get Pina and to search Pina and to search Pina's room and wall locker . . . ." (R. 10). The authorization to search was given about 1430. Pina was not in the company area at this time, but returned at approximately 1700. (R. 24). No search was made in Pina's absence, but as soon as he returned he was brought to the office of Warrant Officer Phipps. Warrant Officer Phipps read Pina his rights, advised him of what he was suspected, and asked him if he had any objections to a search of his person or wall locker. (R.

19). Pina stated he had no objection. Following a search of Pina's person, which disclosed no marijuana, Pina led Warrant Officer Phipps to a locker. (R. 19). The locker had two combination locks which Pina, seeming nervous and upset, manipulated but could not open. (R. 20). Warrant Officer Phipps sent a staff non-commissioned officer to obtain a pair of bolt cutters and proceeded to cut the locks and gain access to the locker. A brown paper package was found in the locker which contained 850 grams of marijuana. Pina at this point disclaimed ownership of the marijuana. Subsequent investigation revealed that the locker was in fact not Pina's, but belonged to the appellant. Neither the appellant nor his locker had been mentioned in the information furnished the officer authorizing the search, nor did the authorization refer in any way to appellant or his locker.

Appellant attacks both the search authorization and Pina's consent to search, by arguing that the evidence was insufficient to justify the authorization to search Pina's locker and that Pina had no authority or standing to waive the appellant's constitutional rights. The Government contends Major Smith had probable cause to authorize the search and that the good faith of Warrant Officer Phipps was sufficient to overcome the "thorny issue" of searching appellant's locker instead of the one authorized by Major Smith.

We need not address the question whether there was probable cause to search Pina's locker because, assuming there was probable cause, it did not bear on the search of appellant's locker. The command authorization was for a search of Pina's locker, not appellant's and the authorization for one did not carry over to the other.

█ Major Smith acted in the role of a magistrate when he authorized the search and, as such, had no right based on known information to authorize a search of appellant's locker. A magistrate has no right to issue a warrant to search a place not mentioned in the affidavit upon which it is based. *Durrett v. State*, 136 Ga.App. 114,

220 S.E.2d 92 (1975); 79 C.J.S. Searches and Seizures § 75. Therefore, if the search of appellant's locker is to be found legal it must be based on grounds other than proper authorization.

■ When an authorization is made by the magistrate based on probable cause and a search is conducted, the thing searched must be that described in the authorization. If a Government agent executes a search warrant (authorization) at a place not described in the warrant, the search and seizure is without any semblance of validity. A search of a place other than that described in a search warrant is, in effect, a search without a warrant. *People v. Royse*, Colo., 477 P.2d 380 (1970). In an Arizona case, a warrant was issued to search a house at 309 22nd Avenue. Prior to the search, the officer determined that a mistake was made and the search should be at 413 22 Avenue. The warrant was modified and the officer searched the defendant's home, which was located at still a different address, namely, 411 22nd Avenue. The search was held invalid, with the court stating: "Since the warrant in this case was executed upon a house which was not described in the warrant, it does, of necessity, violate the constitutional requirements previously set forth." *State v. Boniface*, 26 Ariz.App. 118, 546 P.2d 843 (1976). A United States District Court considered a case in which the search warrant was for 2144 8th St., N.W. and the police searched 2124 8th St. N.W. The court suppressed the use of the contraband in this case. *United States v. Kenney*, 164 F.Supp. 891 (D.D.C.1958). In an Illinois case, officers attempted to execute a search warrant for the person of "Aubrey Young" and the premises of "4401 W. West End St., 3rd Floor." The officer went to the address [1] saw the name "Young" on a mailbox and entered the 3rd floor apartment of "Willard Young." Ruth Young, wife of Willard Young, told the officers they had the wrong apartment, that the apartment they were in did not belong to "Aubrey Young." The officers, still thinking they were in the apartment described in the warrant, commenced the search. Ruth Young grabbed a ketchup bottle and commenced to batter the officers. In the trial of Mrs. Young for resisting a police officer and assault and battery, the State argued that an "authorized" act is an act which the officer reasonably believes is authorized. The court in answering this contention stated:

> The search warrant for Aubrey Young and 4401 W. West End St., clearly gave no express right to search the apartment of Willard Young, 4403 W. West End St.; nor could it give an implied right because of the constitutional requirement that the person and place to be searched must be described with particularity. United States Constitution, Amend. IV; Illinois Const., Art. II, § 6, S.H.A. Therefore, whether the officer's belief as to his authority was reasonable or unreasonable, he was not authorized to search the defendant's apartment and the act of the defendant in resisting him did not violate the statute. [*People v. Young*, 100 Ill. App.2d 20, 241 N.E.2d 587 (1968)].

■ The record of trial reveals that Warrant Officer Phipps sought Private Pina's consent to search his person and locker rather than utilizing the authorization issued by Major Smith. (R. 19). We do not think it necessary to discuss in detail the legality of Private Pina's consent if his own locker had been searched. The evidence shows no interest of any degree, past, present, or future, of Private Pina in the locker of appellant. We further find that at the time of the search appellant had rightful and exclusive present occupancy of the locker, and that Private Pina was not authorized to consent to a search of appellant's locker. There is no evidence in this case that the appellant waived his constitutional right to immunity from unreasonable searches and seizures. This is a personal right and can only be waived by the person holding it. *Stoner v. California*, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); *United States v. Garlich*, 15 U.S.C.M.A. 362, 35 C.M.R. 334 (1965); *United States v.*

---

1. The apartment building had a joint entrance numbered 4401 and 4403 W. West End Street.

*Mathis*, 16 U.S.C.M.A. 522, 37 C.M.R. 142 (1967). Private Pina's consent to search therefore legitimately could not empower Warrant Officer Phipps to search the locker of appellant.

▮ The Government, in an effort to establish the legality of the search, argues that Government agents believed in good faith they were searching Private Pina's locker, and that this good faith made their acts reasonable and the search lawful. The good faith of Government agents, however, does not meet the test required by the Constitution. The legality of a search cannot be balanced against the good faith of the searcher and an unlawful search, though made in the honest belief of right, remains unlawful and its fruits remain forbidden. *Green v. United States*, 10 Cir., 386 F.2d 953 (1967). If good faith alone were the test, the protection of the Fourth Amendment would evaporate and only the discretion of the police would remain. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *People v. Baldwin*, 62 Cal.3d 727, 133 Cal.Rptr. 427 (1976). A good faith belief on the part of a Government official, no matter how sincere, does not vitiate illegality. *Southland Theatres, Inc. v. Butler*, D.C., 350 F.Supp. 743 (1972). We do not doubt the good faith of Warrant Officer Phipps in believing he was searching Private Pina's locker, but Constitutional protection cannot be waived by the good intentions of authorities serving a search warrant. *United States v. Gervato*, D.C., 340 F.Supp. 454 (1972), *vacated*, 3 Cir., 474 F.2d 40, *cert. denied*, 414 U.S. 864, 94 S.Ct. 39, 38 L.Ed.2d 84 (1973).

▮ The Government, with another theory to uphold the search, argues that Private Pina was acting in a private capacity when he authorized the Government agents to enter the appellant's locker and that, therefore the fruits of the search should not be excluded. The record of trial clearly shows that Private Pina went to the locker at the instigation and behest of Warrant Officer Phipps so that the latter could ascertain whether or not it contained marijuana. The law is clearly enunciated with numerous citations in *United States v. Pryba*, 163 U.S.App.D.C. 389, 502 F.2d 391 (1974), which holds:

> Where the search is made at the behest of or with the assistance of law enforcement officers, there must be probable cause, and in appropriate instances an authorizing warrant, if the search is to pass constitutional merits. But where the search is made on the carrier's own initiative for its own purposes, Fourth Amendment protections do not obtain for the reason that only the activities of individuals or nongovernmental entities are involved. So frequently and so emphatically have the courts enunciated and applied these principles that, at least for the time being they must be regarded as settled law.

We are convinced Private Pina was not acting in a private capacity when he led Warrant Officer Phipps to appellant's locker and this theory cannot be relied on to uphold the search.

▮ The Fourth Amendment does not forbid all searches and seizures, but only those that are unreasonable. *United States v. Lipscomb*, 5 Cir., 435 F.2d 795 (1970), *cert. denied*, 401 U.S. 980, 91 S.Ct. 1213, 28 L.Ed.2d 331 (1971), *reh. denied*, 402 U.S. 966, 91 S.Ct. 1635, 29 L.Ed.2d 131 (1971). There are no fixed formulas, however, to determine if a search is "reasonable," and the Constitution does not define "unreasonable." The recurring question of the reasonableness of searches must find resolution in the facts and circumstances of each case. *United States v. Rabinowitz*, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950). In considering the search in each case, ". . . the test is the reason underlying and expressed by the Fourth Amendment; the history and the experience which it embodies and the safeguards afforded by it against the evils to which it was a response." *United States v. Rabinowitz, supra* ; *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). In applying this test, we must keep in mind that the Fourth Amendment protects people, not places (*Lewis v. United States*, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966)), and in

deciding an issue involving a search, these Constitutional guarantees should be given a liberal or a strict construction in favor of the individual even though he may be guilty, for they apply to the accused, suspected, and guilty, as well as the innocent. *Go-Bart Importing Co. v. United States*, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374 (1931); 79 C.J.S. Searches and Seizures § 4. In looking at this case we are convinced the proof is the fruit of an illegal search. *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920); *Safarik v. United States*, 8 Cir., 62 F.2d 892 (1933). There being no other evidence to support the guilt of the accused, the findings of guilty by the military judge are disapproved and the Charge and specification are dismissed.

Senior Judge BAUM and Judge GRANGER concur.